MEMPHIS CITY RAILWAY COMPANY *v.* JOHN LOGUE,
Administrator.

DAMAGES. *Charge of court.* In an action for the recovery of damages
for a personal injury against a street railroad company the court
charged as follows: "It is the duty of the defendant to furnish
lights on its cars at night such as will enable its drivers to see ob-
jects ahead on the track, with the aid of the street lights, in time to
avoid an accident." Held, erroneous.

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby
county.   J. O. PIERCE, J.

GEORGE GILLHAM for Railway Company.

TAYLOR & CARROLL for Logue.

COOPER, J., delivered the opinion of the court.

Action of damages brought by Logue, as admin-
istrator of Posey Webb, deceased, against the railway
company for injuries to the intestate by one of the
company's street cars resulting in her death. The
verdict and judgment were in favor of the plaintiff
below, and the company appealed in error. The Ref-
erees report in favor of affirmance. The exceptions
of the company to the report are directed to alleged
errors in the charge of the trial judge.

The railway company owns and operates a street
railroad in Memphis, the cars being drawn by horses

or mules. The intestate of Logue, a colored child of the age of two years and nine months, was killed by one of these cars on the night of June 22, 1881, about eight o'clock in the evening. The night was dark, making it difficult to see a small object on the track, even at the distance of a few feet, although larger objects, such as a man pushing a baby-carriage, could be seen much further off. The father of the intestate had put a younger baby in a baby-carriage, and trundled the carriage along the track. The intestate followed the father, and, although ordered back by him, got upon the railway. She was dressed in dark colored clothing. The company's car was the common street car properly equipped with lamps on the front end, such as are used on all the street cars of the city, lighted and burning. The driver was standing on the front platform in his proper place, holding the reins in one hand, and with the other hand on the handle of the brake. He was looking ahead, and saw the father of the intestate with the baby-carriage, but did not see the child until he noticed the mules veering to one side, and then saw a crawling object without being able to distinguish what it was. He immediately reined up the mules, put on the brakes, and stopped the car in time to prevent the wheel passing over the child, the injuries from which it died being probably inflicted by the single-tree and the brake.

The part of the charge principally excepted to is this: "It is the duty of the defendant to furnish

3—VOL. 13.

lights on its cars at night, such as will enable its car-drivers to see objects ahead on the track, with the aid of the street lights, in time to avoid accidents." The plaintiff in error insists that the charge is too stringent.

While a common carrier of passengers is not an insurer, he is bound to the diligence which a good specialist in his particular line of business is accustomed to exert. His care and diligence must be in proportion to the risk of the machinery he employs and of the work he undertakes: Whar. on Neg., sec. 627. The same degree of care is not required of the carriers of passengers upon street cars drawn by horses as of railway companies whose cars are drawn by steam. The public have an equal right with the company to travel on the streets, and therefore the company must, in using its franchises, exercise such care and caution for the purpose of avoiding accidents and endangering property and persons as a reasonable prudence will suggest: 5 Wait's Act. & Def., 343. In general, the same degree of care as to pedestrians is required of them as of the driver or owner of any other vehicle: *Unger* v. *Street Railway Co.*, 51 N. Y., 497. Owing to their momentum and noiselessness, the cars are generally required to use bells and display lights: *Johnson* v. *Railroad Co.*, 20 N. Y., 65; *Shea* v. *Railroad Co.*, 44 Cal., 414. These precautionary measures seem intended to put pedestrians on their guard rather than to aid the company in protecting them. But there can be no doubt that the company is bound to operate its cars in such a man-

ner, if possible, as to injure no one, and to this end to have the ordinary means such as are usually found adequate and safe: Whar. on Neg., sec. 639. In view of the recognized principles, the question is whether the requirement of the charge does not go beyond the requirement of the law. It requires the defendant company to furnish such lights in its cars at night as will, under all circumstances, with the aid of the street lights, enable its drivers to see objects on the track in time to avoid accidents.

The charge is, like so many charges which come before us, open to the objection that it undertakes to lay down a general proposition of law instead of confining the law to the facts of the particular case. And the proposition itself is open to the objection that it requires a degree of light which might, under some circumstances, transcend not merely what is usually found adequate and safe, but the bounds of science. Even in the case of steam railroads, the companies are only required to avail themselves in the night time of such means and appliances as might be reasonably obtained to enable their employees to see ahead on the track: *Nashville & Chattanooga Railroad Company* v. *Smith*, 6 Heis., 174. And where the night was very dark, and the headlight of the steam engine was so obscured by rain that the look-out could not see any considerable distance ahead, whereby an accident occurred, this Court said: "We cannot admit that if the light becomes obscure from natural causes, without any defect in the light and appurtenances, without any fault on the part of the employees, that

in all cases as matter of law, the company is to be liable for the consequences": *Louisville & Nashville Railroad Co.* v. *Melton.* 2 Lea, 262. The instruction now under consideration would, as a general proposition, hold a street railroad company to a greater strictness than would be required of a steam railroad company. The facts of the case did not require the enunciation of such a proposition. But we cannot limit the language to the actual facts.

The exceptions to the report of the Referees will be allowed, the judgment below reversed, and the cause remanded for a new trial.