[Civ. No. 15629. Second Dist., Div. Two. Apr. 28, 1947.]

ANTHONY J. SUTERA, Appellant, v. JACK PALMIERI et al., Respondents.

David A. Matlin for Appellant.

Crider, Runkle & Tilson and Chase, Rotchford, Downen & Chase for Respondents.

WILSON, J.—Plaintiff appeals from a judgment refusing to award damages to him in a personal injury action.

Respondent Donny was the owner and respondents Palmieri the lessees of the storeroom in which the accident occurred. Respondents Palmieri were engaged in the wholesale and retail cleaning and dyeing business. At the rear of the premises there was a fire door approximately eight feet high, eight feet wide and four inches thick, sheathed in steel and weighing between 700 and 1,000 pounds. It was a sliding or rolling door to which three iron bands were attached and on the ends of the bands were rollers on which the door rolled northerly and southerly on an overhead iron bar. On the day

of the accident Norma Palmieri was the manager of the business. When she determined to close the store in the evening she was unable to operate the door by reason of its weight. She called appellant from his place of business across the street and asked him to assist her. Appellant walked with her to the rear of the premises where he found that the door was open for the entire distance of the doorway. The handle of the door was on the south or right-hand side. Appellant, using his left hand, took hold of the handle and pulled the door from left to right. It rolled easily for about six feet when something caused it to stop. There is a conflict in the evidence as to the cause of the accident, whether the door fell while being pulled along the rollers or fell from the track as a result of appellant's action in shaking it. Mrs. Palmieri testified that she helped appellant in his attempt to close the door and that while he was pulling on the handle with both hands she was at the rear of the door pushing it; that when the door ceased rolling appellant forcefully shook it with both hands attempting to shake it loose when it fell on him. Appellant denied that Mrs. Palmieri assisted him, stated that he used only his left hand in pulling on the door, and denied that he shook or ''jiggled'' it before it fell on him.

█ The court resolved the conflict by finding that none of the respondents managed or controlled the door at the time it fell; that at said time the door was under the management and control of appellant; that the door was not negligently maintained or operated by respondents, and that appellant's injuries were not as a direct and proximate result of any negligence on the part of any of the respondents. The findings of the court are conclusive and every substantial conflict must be resolved in favor of a finding made upon conflicting evidence. (*Shapiro* v. *Equitable Life Assur. Soc.*, 76 Cal.App.2d 75, 96 [172 P.2d 725] ; *Buckhantz* v. *R. G. Hamilton & Co.*, 71 Cal.App.2d 777, 779 [163 P.2d 756] and cases cited.)

█ The burden was on appellant to prove negligence on the part of respondents. █ The mere fact that an accident occurred raises no presumption or inference that respondents were negligent or careless. (*Miller* v. *Cranston*, 41 Cal.App.2d 470, 476 [106 P.2d 963] ; *Diamond* v. *Weyerhaeuser*, 178 Cal. 540, 542 [174 P. 38] ; *Hubbert* v. *Aztec Brewing Co.*, 26 Cal.App.2d 664, 688 [80 P.2d 185, 1016].)

Appellant invokes the doctrine of res ipsa loquitur contending that all elements of that doctrine are present, to wit,

the door caused the injury, it was under the management of respondents, sliding doors do not ordinarily fall unless the owner was negligent, and there was no explanation by respondents of their conduct. ▮ The doctrine of res ipsa loquitur has three conditions: (1) the accident must be of a kind that does not ordinarily occur in the absence of negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. (*Ybarra* v. *Spangard,* 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258]; *Olson* v. *Whitthorne & Swan,* 203 Cal. 206, 208 [263 P. 518, 58 A.L.R. 129]; *Escola* v. *Coca Cola Bottling Co.,* 24 Cal.2d 453, 457 [150 P.2d 436].) ▮ The evidence of Mrs. Palmieri, which must have been believed by the court in view of the findings, shows that two of the elements above enumerated were not present: (1) the door was not within the exclusive control of respondents but was being operated by appellant; (2) the accident was due to the action of appellant in forcefully shaking the door in his attempt to dislodge and close it.

Appellant asserts that the doctrine as stated in the Escola case is applicable because, according to the contention in his brief, the door was on the premises of respondents, they had control of it and there had been no change in its condition prior to the time appellant attempted to close it. The door was under respondents' control to the extent that it was on their premises, but it was being actively controlled and operated by appellant at the time it fell, and it was caused to fall by appellant's act in attempting to force it to close. Jack Palmieri, one of respondents, testified that he had been in possession of the premises for several months prior to the accident; that he had opened and closed the door many times and had never experienced any difficulty in its operation. The doctrine of res ipsa loquitur is not applicable under the facts in this case. (*Hubbert* v. *Aztec Brewing Co.,* 26 Cal. App.2d 664, 688 [80 P.2d 185, 1016]; *Biddlecomb* v. *Haydon,* 4 Cal.App.2d 361, 364 [40 P.2d 873].)

Respondents Palmieri were engaged in the cleaning and dyeing business both wholesale and retail, but the greater amount of their business was wholesale. The rear door was used for the receipt and delivery of garments and other materials that were handled in wholesale lots. The door was not used by the public but only by deliverymen and em-

ployees of respondents Palmieri. The small amount of retail business received and delivered from the public generally was handled through the front door. The rules pertaining to entrances and exits used by the public are not applicable to the door that caused appellant's injuries.

The door was neither a dangerous instrumentality nor a trap, as contended by appellant, nor was it inherently dangerous to life or limb. According to the evidence it had been operated for a long period of time without accident and without difficulty in opening or closing it.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.